UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| REV. WILLIE McCRANIE-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-312 CAS |
| | ) | |
| STEVE LARKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Susie Boyer and Nicole L. Gannon's motion for summary judgment. Defendants Susie Boyer and Nicole L. Gannon argue there are no genuine issues of material fact and they are entitled to judgement as to all claims against them. Plaintiff opposes the motion and filed a response memorandum as well as a response to defendants' statement of uncontroverted facts. Defendants filed a reply memorandum. The motion is fully briefed and ripe for review. For the following reasons, the Court will grant defendants' motion.

*I. Background*

Plaintiff Rev. Willie-McCranie-El brings his claims pursuant to 42 U.S.C. § 1983 for violations of his civil rights. Plaintiff, who is a state prisoner, alleges officers of the Missouri Department of Corrections ("MDOC") and medical personnel violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment. In his third amended complaint[1] (hereinafter referred to as "Complaint"), plaintiff alleges that on March 10, 2008, he was attacked

---

[1] Plaintiff originally filed a pro se complaint on February 22, 2010. On June 24, 2010, the Court granted plaintiff's motion for appointment of counsel. Plaintiff's counsel filed an amended complaint on July 23, 2010, a second amended complaint on August 11, 2010, and a third amended complaint on November 28, 2011.

without provocation or warning by five correctional officers, who beat him and sprayed him with pepper spray.  Immediately following the alleged assault and battery, plaintiff contends that he received inadequate medical treatment, despite the fact that he had visible injuries and made specific complaints of pain.  Plaintiff also alleges that in the days and weeks following the incident, and despite numerous requests for medical treatment for his pain and injuries, plaintiff received no medical treatment for injuries arising from the alleged assault and battery until April 2008, when he received an x-ray of his right hand, which showed that he was "permanently disfigured." Complaint at 6.  In his Complaint, plaintiff brings one claim against both Susie Boyer and Nicole L. Gannon for deprivation of civil rights for providing inadequate medical care and treatment (Count III).

In their motion for summary judgment, defendants Susie Boyer and Nicole L. Gannon argue they are entitled to judgment as a matter of law because plaintiff is unable to present any probative evidence that they acted with deliberate indifference towards plaintiff's serious medical needs, and the medical records and evidence demonstrate that plaintiff was provided with appropriate and consistent medical care for his medical complaints following the use-of-force incident.  They also argue there is no evidence to establish that the care they provided resulted in any damage to plaintiff.

## *II.  Summary Judgment Standard*

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006). In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

### III.  Facts

During all relevant times alleged in the Complaint, plaintiff was incarcerated at the Eastern Reception Diagnostic and Correctional Center ("ERDCC").  Defendants Susie Boyer ("Nurse Boyer") and Nicole L. Gannon ("Nurse Gannon") were employed at all relevant times by Corizon, Inc., as Licenced Practical Nurses.  Nurse Boyer and Nurse Gannon provided medical care and treatment to inmates confined at ERDCC.  They were permitted to perform physical assessments of patients, monitor patients, take vital signs, apply dressing and bandages, prepare and administer injections, collect samples for testing, perform medication pass, provide patient education, and perform other related healthcare for the patients with the instructions of a physician or supervising nurse.  As Licensed Practical Nurses, Nurse Boyer and Nurse Gannon did not have control over the movement of the inmates, or when or where the inmates were allowed to shower.  They also did not have involvement in the issuance of clothing or linens to the inmates.

On March 10, 2008, there was a use-of-force incident involving plaintiff.  Neither Nurse Boyer nor Nurse Gannon was present during the use-of-force incident, and neither nurse had independent knowledge about the force that was used against plaintiff.  Sometime following the incident, Nurse Boyer was contacted by custody staff requesting a post use-of-force assessment. Nurse Boyer performed a physical examination of plaintiff and assessed him for discomfort to his facial area associated with the administration of pepper spray.  Nurse Boyer contends plaintiff's only verbal complaint at the time was that he was experiencing pain and discomfort to his face due to the pepper spray.  Plaintiff disputes this, he testified that he also complained to Nurse Boyer that his

4

middle and ring fingers on his right hand were injured, and that he needed medical treatment for this injury. There is also a dispute of fact as to whether plaintiff's right hand appeared deformed such that the injury would have been apparent upon examination. It is undisputed, however, that Nurse Boyer checked plaintiff's airway, level of consciousness, and his body for any physical injuries. She concluded that plaintiff's airway was clear and that he was fully oriented and alert. Following her assessment, Nurse Boyer lifted the spit net that had been placed over plaintiff's head following the use-of-force incident, and used a wet towel to remove at least some of the irritants from his face. Nurse Boyer asked a corrections officer whether plaintiff could take a shower, and the officer replied he could not.

From March 11, 2008 through June 2, 2008, Nurse Gannon reviewed approximately eight Medical Service Request forms plaintiff had completed that related to the use-of-force incident. More specifically, on or about March 11, 2008, Nurse Gannon reviewed two Medical Service Request forms in which plaintiff complained of pain to his buttocks and his right side. On March 12, 2008, Nurse Gannon assessed plaintiff for these complaints of pain. Nurse Gannon noted that plaintiff had a golf ball size knot on his hip. She referred plaintiff to the prison physician for follow-up care and she obtained a physician's verbal order for Naproxen, a pain medication.

On or about March 13, 2008, plaintiff submitted a third Medical Service Request form in which he complained of pain to his shin, side, back, and neck. Nurse Gannon reviewed this form on March 18, 2008. Plaintiff was then assessed by medical staff for these complaints of pain. On or about April 7, 2008, plaintiff submitted a fourth Medical Service Request form complaining that he sustained an injury to his hand during the use-of-force incident on March 10, 2008. Nurse Gannon reviewed his Medical Service Request form on April 7, 2008, and submitted his request for

5

a sick call visit. Nurse Elizabeth M. Whitner assessed plaintiff regarding his complaint on April 9, 2008. She prescribed Ibuprofen and ordered x-rays of his right hand. Kent McNutt, D.O., reviewed the films of plaintiff's right hand, which were taken on April 10, 2008, and wrote in the plaintiff's medical record:

> Changes are seen of the proximal interphalangeal articulations of the third and fourth digits probably representing posttraumatic sequela. Developmental variation would also be considered. Foreshortening is seem of the third metacarpal, again possibly associated with previous fracture or developmental process. Evidence of acute osseous injury is not appreciated. Significant soft tissue swelling is not seen. Please note the deformity of the third and fourth digits result in inability to extend the digits on the AP and oblique views. See Defendants' Ex. D at 524.

Plaintiff testified that he did not have any pre-existing deformity in his right hand prior to the use-of-force incident.

On April 7, 2008, plaintiff submitted a fifth Medical Service Request form in which he complained that he had sustained a cut above his eye during the March 10, 2008 use-of-force incident. Nurse Gannon reviewed the form on April 7, 2008, and referred plaintiff to the optometrist for specialized eye care. On April 21, 2008, plaintiff submitted a sixth Medical Service Request form complaining of back pain from the March 10, 2008 use-of-force incident. Nurse Gannon reviewed the form and noted that plaintiff already had a scheduled doctor's appointment for this request.

In May and June 2008, plaintiff submitted two additional Medical Service Request forms complaining that he had injured his hand in the use-of-force incident and needed to be examined by an orthopedic specialist. On June 12, 2008, Nurse Gannon examined plaintiff for his hand complaints. She noted that plaintiff had a slight deformity in his hand with no swelling or bruising. She also noted that plaintiff had a previously scheduled specialist appointment for his medical

6

complaint. She advised him to return to nurse sick call, as needed. It was her opinion that no additional care was medically necessary at that time.

On August 8, 2008, plaintiff was examined by Nurse Practitioner Nicole Blaha for his complaints of hand pain. It was noted in plaintiff's medical records, "X-ray shows the deformity but it is not certain if this is posttraumatic sequelae or congenital deformity. On review of all previous physical exams, there is no note of a hand deformity." Id. at 550. Nurse Blaha ordered an x-ray of plaintiff's left hand for comparison purposes, and referred plaintiff to an orthopedic specialist for further evaluation. On August 14, 2008, Dennis Luetkemeyer, M.D., reviewed the films of plaintiff's right and left hands. He noted in plaintiff's medical record: "Three views of the right hand were obtained. Bony architecture and joint spaces are preserved. The cortical margins and articular surfaces are smooth. Impression: Negative for bony abnormality involving the right hand and wrist." Id. at 552.

### IV. Discussion

The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minnesota Dep't of Corrs., 512 F.3d 478, 483 (8th Cir. 2008). See also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). "'To establish a constitutional

violation, it is not enough that a reasonable official should have known of the risk." Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.'" Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. See Farmer, 511 U.S. at 842; Jones, 512 F.3d at 483. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may held liable for deliberate indifference. See Farmer 511 U.S. at 847. That said, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006)).

When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogation on other grounds recognized by Reece v. Groose, 60 F.3d 487, 492 (8th Cir. 1995) (quoting Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). Therefore, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill, 40 F.3d at 1188).

In their motion for summary judgment, Nurse Boyer and Nurse Gannon argue plaintiff cannot present any evidence to establish that they were deliberately indifferent to any serious medical need, or that the treatment they administered was inadequate. Defendants also argue that

8

plaintiff is unable to show that they failed to provide him with adequate medical treatment that resulted in any damage or injury.  In his response, plaintiff argues that Nurse Boyer and Nurse Gannon failed to treat the injury to his right hand.  He also argues in his response that the medical treatment Nurse Boyer administered following the use-of-force incident was inadequate because she failed to properly remove the pepper spray from his face.  Plaintiff makes no other claims of inadequate medical treatment with regard to Nurse Boyer and Nurse Gannon.

      A.      **Claim of Failure to Treat Injury to Right Hand**

In his response to defendants' motion for summary judgment, plaintiff argues defendants are not entitled to judgment as a matter of law because these two defendants failed to treat the injury to his right hand.  Plaintiff argues when Nurse Boyer examined plaintiff following the use-of-force incident on March 10, 2008, she should have known plaintiff's right hand needed medical treatment not only because plaintiff complained of the injury, but because his hand was visibly deformed as a result of the trauma that occurred that day.  He also argues that in the days and weeks following the use-of-force incident, Nurse Gannon failed to treat the injury to his right hand, and she should have known he needed medical treatment because the injury was visually obvious, and moreover, he complained of his injuries in multiple Medical Service Requests forms, which were evaluated by Nurse Gannon.

The Court finds plaintiff has presented evidence of a serious medical condition.  While the facts are in dispute, there is evidence to suggest plaintiff may have broken his hand or fingers during the use-of-force incident, and the Eighth Circuit has held a broken hand is a serious medical condition.  Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) (finding the plaintiff had presented evidence of an objectively serious medical need – a broken bone in his hand); Bryan v.

Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) ("[t]here is no doubt that the plaintiff had a serious medical need. His hand had been broken."). While the evidence is tenuous, there is also evidence in the record to suggest Nurse Boyer and Nurse Gannon knew of plaintiff's condition. Plaintiff testified that he told Nurse Boyer that his hand was injured at the time he was evaluated following the use-of-force incident. And there is a dispute of fact as to the appearance of his right hand, and whether it was visibly deformed such that Nurse Boyer or Nurse Gannon knew that he required medical attention. That said, the Court finds defendants are entitled to summary judgment because plaintiff cannot show Nurse Boyer and Nurse Gannon deliberately disregarded his medical needs.

The facts of this case are nearly identical to the facts in Johnson v. Hamilton. 452 F.3d 967.[2] There, the plaintiff was involved in a serious altercation with MDOC officers. Following the fight, the plaintiff was examined by a nurse, who treated the plaintiff for skin abrasions. Id. at 971. Six days later, the plaintiff complained of pain in his hand and requested x-rays. Eleven days later, he was examined by a different nurse, who gave the plaintiff Ibuprofen and referred him to a physician. Id. The plaintiff testified that at the time, the nurse told him that it was likely his finger was fractured. Id. Approximately one month later, the plaintiff was seen by the physician, who ordered an x-ray and prescribed additional pain medication. Id. An x-ray was of the hand was not taken until two months after the injury, and a month after the nurse expressed the belief that she thought the finger was broken. Id. The x-ray showed that indeed there was a fracture in the plaintiff's finger. Based on these facts, the Eighth Circuit concluded the medical personnel defendants were entitled to judgment as a matter of law, because the plaintiff "has presented no evidence [ ] that [the]

---

[2]Neither side cited to this controlling case law in their briefs. This is especially surprising because defendants' counsel, Peter Dunne and Jessica Liss, were the attorneys of record for the defendants in Johnson v. Hamilton. 452 F.3d at 970.

delay was the result of anything other than negligence." Id. at 973.  And "[m]ere negligence does not rise to a constitutional violation." Id. (citing to Dulany v. Carnahan, 132 F.3d at 1239).

The Court finds that the facts of the case before the bar are indistinguishable from the facts in Johnson, with the exception that in Johnson the plaintiff's condition was somewhat more serious. After viewing the x-ray, the physician in Johnson referred the plaintiff to an orthopedic surgeon, and the plaintiff required specialized treatment for the fracture. 452 F.3d at 971.  Here, in the end, a medical doctor concluded after viewing plaintiff's x-rays that plaintiff's condition was "[n]egative for bony abnormality involving the right hand and wrist." Defendants' Ex. D. at 552.  There is no evidence in the record that plaintiff required further treatment.  Finding Johnson to be controlling, the Court must find, even viewing the evidence in a light most favorable to plaintiff, that Nurse Boyer and Nurse Gannon were at most negligent, and these defendants are entitled to summary judgment as a matter of law with regard to plaintiff's claim that they delayed or failed to provide medical treatment for his injured hand. 452 F.3d at 973.

**B. Claim that Nurse Boyer Inadequately Removed Pepper Spray Following the Use-of-Force Incident**

In his response, plaintiff also argues Nurse Boyer provided inadequate medical treatment because she failed to remove all, or even a substantial portion of the pepper spray following the use-of-force incident.  Based on the record before it, the Court concludes plaintiff cannot state a claim against Nurse Boyer based on her treatment during the post use-of-force assessment.  Viewing the evidence in a light most favorable to plaintiff, it is undisputed that Nurse Boyer attempted to remove the pepper spray by removing plaintiff's spit mask and using water from a wet towel to wash

plaintiff's face.[3] She then asked a MDOC officer whether plaintiff could take a shower, and the officer replied, "no." Plaintiff further admits that Nurse Boyer did not have control over his movement as an inmate, or when or where he could shower. She also had no involvement in the issuance of his clothing or linens.

It is undisputed Nurse Boyer did attempt to treat the burning sensation plaintiff felt from the pepper spray, and plaintiff does not state in his response what other medical treatment Nurse Boyer should have administered that was within her authority, and how failure to administer that treatment caused him damage. The Court finds, as a matter of law, that Nurse Boyer is entitled to summary judgment as to plaintiff's claim that she failed to provide him adequate medical treatment regarding removal of the pepper spray following the use-of-force incident. Perhaps Nurse Boyer's removal of the pepper spray was not the most effective method, but the Court cannot find Nurse Boyer was "deliberately indifferent to [plaintiff's] serious medical needs." Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995).

### V. Conclusion

In sum, the Court finds defendants have shown that they are entitled to summary judgment as to plaintiff's claims against them for failure to provide adequate medical care. Plaintiff cannot establish that Nurse Boyer and Nurse Gannon were deliberately indifferent to the injury to his right hand. At most, they were negligent. And in regard to the removal of the pepper spray, plaintiff also cannot show Nurse Boyer was deliberately indifferent to his serious medical needs. Nurse Boyer

---

[3] In their reply, defendants refer to a videotape provided by MDOC that shows Nurse Boyer attending to plaintiff after the use-of-force incident. This video, however, was not provided to the Court, and the Court did not take it into consideration in deciding the motion summary judgment.

attended to his condition, and plaintiff has not shown what treatment within her authority Nurse Boyer should have provided, and how her failure to provide that treatment caused him damage.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Susie Boyer and Nicole Gannon's motion for summary judgment is **GRANTED.**  [Doc. 123]

A separate Partial Judgment and Order of Dismissal shall accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  14th  day of March, 2012.